**NOS. 22-4226; 22-4520**

In The

# United States Court Of Appeals
## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## JARED SHEMAIAH JONES;
## JERVONTA ANTONIO WALKER,

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

———————————

**BRIEF OF APPELLANT
JERVONTA ANTONIO WALKER**

———————————

**William R. Terpening**
**TERPENING LAW, PLLC**
**221 West 11th Street**
**Charlotte, NC  28202**
**(980) 265-1700**

***Counsel for Appellant***
  ***Jervonta Antonio Walker***

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ......................................... 1

ISSUES ................................................................................ 1

STATEMENT OF THE CASE ................................................ 2

SUMMARY OF ARGUMENT ................................................ 8

ARGUMENT ........................................................................ 10

    I.    THE DISTRICT COURT DID NOT MAKE SUFFICIENT FINDINGS TO APPLY A FOUR LEVEL LEADERSHIP ROLE ENHANCEMENT UNDER U.S.S.G. § 3B1.1(a) ..................... 10

        A.    Standard of Review ..................................... 10

        B.    Argument ..................................... 11

    II.    THE CMRA POST OFFICE BOX LOCATION IS NOT AN ADEQUATE PREMISES TO SUPPORT APPLICATION OF U.S.S.G. § 2D1.1(b)(12) ....................... 13

        A.    Standard of Review ..................................... 13

        B.    Argument ..................................... 14

    III.    THE GOVERNMENT'S REFUSAL TO MOVE FOR A DOWNWARD DEPARTURE BASED ON WALKER'S SUBSTANTIAL ASSISTANCE WAS UNCONSTITUTIONAL AND NOT RATIONALLY RELATED TO ANY LEGITIMATE GOVERNMENT END ..................... 17

        A.    Standard of Review ..................................... 17

        B.    Argument ..................................... 17

i

CONCLUSION ...................................................................... 21

REQUEST FOR ORAL ARGUMENT ..................................................... 21

CERTIFICIATE OF COMPLIANCE ...................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Gall v. United States,*
    552 U.S. 38 (2007) ................................................................ *passim*

*United States v. Barnett,*
    48 F.4th 216 (4th Cir. 2022)........................................ 10, 13, 15, 17

*United States v. Carter,*
    564 F.3d 325 (4th Cir. 2009) ...................................................... 10, 11

*United States v. Clark,*
    665 Fed. Appx. 298 (4th Cir. 2016) ...................................... 10, 13, 17

*United States v. Johnson,*
    737 F.3d 444 (6th Cir. 2013) .......................................................... 15

*United States v. Manigan,*
    592 F.3d 621 (4th Cir. 2010) ............................................... 10, 14, 17

*United States v. Provance,*
    944 F.3d 213 (4th Cir. 2019) .......................................................... 12

*United States v. Strieper,*
    666 F.3d 288 (4th Cir. 2012) ............................................... 10, 13, 17

*United States v. Torres-Reyes,*
    952 F.3d 147 (4th Cir. 2020) .......................................................... 12

*United States v. Trivette,*
    159 Fed. Appx. 498 (4th Cir. 2005) ................................................ 17

*United States v. Wallace,*
    22 F.3d 84 (4th Cir. 1994) ............................................................. 19

*United States v. Wilkinson,*
    590 F.3d 259 (4th Cir. 2010) ............................................................ 12

*Wade v. United States,*
    504 U.S. 181 (1992) ............................................................ 18, 19

**Statutes:**

18 U.S.C. § 1956(a)(1)(B)(h) ............................................................ 2

18 U.S.C. § 1956(a)(1)(B)(i) ............................................................ 2

18 U.S.C. § 3231 ............................................................ 1

18 U.S.C. § 3553(a) ............................................................ 12

18 U.S.C. § 3553(e) ............................................................ 2, 18

21 U.S.C. § 646 ............................................................ 2

21 U.S.C. § 841(a)(1) ............................................................ 2

28 U.S.C. § 1291 ............................................................ 1

**Sentencing Guidelines:**

U.S.S.G. § 2D1.1 ............................................................ 15

U.S.S.G. § 2D1.1(b)(12) ............................................................ *passim*

U.S.S.G. § 2S1.1(b)(2)(B) ............................................................ 2

U.S.S.G. § 3B1.1 ............................................................ 2

U.S.S.G. § 3B1.1(a) ............................................................ *passim*

U.S.S.G. § 5K1.1 ............................................................ 2, 18, 21

**Other Authorities:**

https://faq.usps.com/s/article/Mail-Services-
at-Non-Postal-Sites-CMRA (last visited Apr. 6, 2023) ............................ 4

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because this case was prosecuted as an offense against the laws of the United States, over which federal courts have jurisdiction. 18 U.S.C. § 3231. (JA22-29). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. Judgment was entered on August 29, 2022 (JA155-161) and Walker filed a timely Notice of Appeal on September 9, 2022. (JA162-163). This appeal is from a final judgment.

## ISSUES

I.  Did the district court err when it required no evidence and articulated no analysis or rationale for imposing a four-level leadership role enhancement pursuant to U.S.S.G. § 3B1.1(a)?

II. Did the district court err when it imposed a two-level enhancement, under U.S.S.G. § 2D1.1(b)(12), for maintaining a premises for the purpose of manufacturing or distributing a controlled substance based on use of a post office box company.

III. Did the district court err by failing to address the fact that the government's unconstitutional and arbitrary decision to end

Walker's undercover lead role in a critical investigation and not move for a downward departure under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) was not rationally related to any legitimate government end (as the court itself found).

## STATEMENT OF THE CASE

Walker was indicted on July 21, 2020, along with twelve other co-defendants. (JA22-29). Of the nine counts in the Bill of Indictment, he was named in three: drug trafficking conspiracy (21 U.S.C. §§ 841(a)(1) and 646)(Count One), money laundering conspiracy (18 U.S.C. §§ 1956(a)(1)(B)(i) and (h))(Count Two), and possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1)(Count Four) (JA22-25). He was arraigned and pled not guilty on September 25, 2020. (JA30-34). He was allowed to remain out on bond pending trial because he was extensively cooperating with authorities. (JA31). He executed a plea agreement on September 24, 2020, which was not filed until December 3, 2020, in which he pled guilty to the three counts in which he was named. (JA274-281). The parties agreed to a two-level enhancement for money laundering (U.S.S.G. § 2S1.1(b)(2)(B)). (JA275). They also agreed that there should be a role enhancement under U.S.S.G. § 3B1.1, but left open the issue of

2

whether the enhancement should be 2, 3, or 4 levels. (JA275). Those were the only two enhancements the parties agreed to. (JA275-276). The plea hearing occurred over a year and a half later, on August 13, 2021. (JA64-77).

The final Presentence Investigation Report ("PSR"), over Walker's objection (JA309-311), added several additional enhancements beyond those to which the parties agreed. (JA325-326). These included two that are relevant to this appeal: two points under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for purpose of distributing a controlled substance. (JA325) and four points (as opposed to the possible two or three under the plea agreement) for being a leader of criminal activity involving five or more participants, pursuant to U.S.S.G. § 3B1.1(a). (JA325-326). Probation suggested a total offense level of 43, with a criminal history category based on a criminal history score of four. (JA326, JA330). This yielded an advisory range of life. (JA336).

Sentencing occurred on August 25 2022. (JA110-154). After addressing other objections that are not relevant on appeal, the Court came to the issue of applying an enhancement for maintaining a premises under U.S.S.G. § 2D1.1(b)(12). Two premises were at issue – a recording

studio and a mailbox store (a CMRA)[1] named Five Star Mailbox LLC or Mailbox Store and More. (JA123-125, JA322). It was undisputed that a primary purpose of the studio was to create music, and the studio does not appear to have been an issue in the decision to apply this enhancement. (JA124, JA126).

With respect to the mailbox store, according to the government, Walker allegedly owned the CMRA to "send money and receive drugs from California without having any kind of oversight." (JA124-125). Thus, it was this CMRA that the government claimed was the "premises" for purposes of the enhancement. (JA125). The court concluded that "premises" could not mean mailboxes or post offices. (JA122). The court agreed with the government that the CMRA satisfied the requirements for the enhancement. (JA126). The PSR suggests that Walker owned the CMRA. (JA322). Beyond that, there was no evidence in Walker's record regarding the store.

---

[1] According to the United States Postal Service, a "Commercial Mail Receiving Agency (CMRA) is a private business that accepts mail from the Postal Service for recipients, keeps it for collection (usually a private mailbox, 'PMB'), or re-mails it to another location with newly paid postage." https://faq.usps.com/s/article/Mail-Services-at-Non-Postal-Sites-CMRA (last visited Apr. 6, 2023).

Next, the court briefly took up the four-point role in the offence objection,[2] pursuant to U.S.S.G. § 3B1.1(a). (JA126-127). As noted, the plea agreement left open the issue of whether this should carry two, three, or four points – the defense argued for two or three. (JA126). With virtually no analysis, the court applied four levels. (JA126-127). The court simply said, in conclusory fashion: "I see a whole lot of people that were in this organization. It was a very complex organization. And there's no question that this defendant was one of the leaders of it." (JA126-127).

Perhaps the most significant issue at sentencing was the matter of Walker's substantial assistance. It is undisputed that Walker went to great lengths to cooperate with authorities, including putting his life at risk by engaging in undercover drug deals. (JA129, JA135). Indeed, his cooperation was sufficiently dangerous that the government provided witness relocation assistance to his family. (JA129, JA135). A DEA task force officer – Damon Grimwade – testified at the sentencing hearing that Walker cooperated extensively. (JA128-137). This cooperation included help (apparently initiated by Walker) with an undercover deal in Atlanta

---

[2] This is transcribed at JA126 as "lonely offense objection." Presumably, this means "role in the offense objection."

to transact seven kilograms of cocaine – a quarter million dollar deal. (JA130-132). "He made the deal happen." (JA130). Before the transaction could be completed, the prosecutor in Charlotte forced Walker to turn himself in. (JA133). As a result of the Charlotte prosecutor's decision, the DEA lost a high value target that would have been arrested because of Walker's cooperation. (JA134).

The Charlotte prosecutor terminated this important Atlanta investigation because he concluded that, as the trial judge put it, Walker "wasn't giving the prosecutor what [the prosecutor] wanted or expected" at the trial of a co-defendant. (JA121). In other words, the Charlotte prosecutor determined that Walker lied while he was testifying as a government witness and terminated his cooperation with the DEA in Atlanta mid-operation as a result. The prosecutor said at sentencing: "[O]ur position is that even if he was to merit a 5K, his conduct wiped that away." (JA145).

The trial judge disagreed with the prosecutor, finding that he did *not* believe Walker was lying when he testified at the co-defendant's trial. (JA121). He could not "find by a preponderance of the evidence that he committed perjury." (JA121). Therefore, he did not withdraw three levels

of acceptance of responsibility or add two levels for an obstruction of justice enhancement. (JA121-122).

Indeed, the trial judge harshly criticized the prosecutor for interfering with Walker's cooperation in Atlanta, stating: "[T]he decision made by one prosecutor to make this witness unusable rather than waiting for a ruling from the Court as to whether perjury was committed was imprudent." (JA146). He continued: [I] think it's an unfortunate decision because just having heard the evidence that I've heard in this and in other settings," the Atlanta case that Walker facilitated "is imminently (sic) prosecutable." (JA146). The court continued: "It's just boiling me that the case is not going to be pursued because of your perception that he committed perjury during trial, notwithstanding the Court's disagreement with that…. It boils me that that decision was made and the way it was made." (JA146-147). The court then concluded:

> I don't know why you were pulled off the street in the middle of an operation to come surrender after having been out for months. *I've never been told any necessary or legitimate reason for that decision to have been made at that time in the middle of an important undercover investigation.* I have no clue why that was done.

(JA148)(emphasis supplied). Indeed, the court found that government's decision to abruptly interrupt the operation put Walker's family at risk. (JA148).

With a downward variance, Walker was sentenced to 240 months. (JA155-161).

## SUMMARY OF ARGUMENT

Walker received a four-point leadership role enhancement under U.S.S.G. § 3B1.1(a), but the government presented no evidence to support application of the enhancement by a preponderance of the evidence, and the court did not articulate any individualized analysis for why four points were appropriate.

In similar fashion, the court applied two points pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. However, it applied this enhancement to a private, commercial post office box company, without sufficient evidentiary or legal support for the notion that a post office box company is a "premises" for purpose of the Guideline. The enhancement does not appear to ever have been applied in such circumstances. Moreover, the court did not require sufficient

evidence to establish by a preponderance of the evidence that the post office box company was primarily used to ship drugs.

Finally, the court did not properly deal with the government's irrational, vindictive, and unconstitutional decision to end Walker's dangerous role as an undercover cooperator in a high-stakes criminal investigation. The district court found that the government's decision was not rationally related to any legitimate purpose. Indeed, it found the opposite, stating: "I don't know why you were pulled off the street in the middle of an operation to come surrender after having been out for months," and "I've never been told any necessary or legitimate reason for that decision to have been made at that time in the middle of an important undercover investigation." (JA148). Despite literally finding that there was no legitimate reason for the government to terminate Walker's cooperation and move for a downward departure based on his substantial assistance, the court took no action. It should have held an evidentiary hearing and granted its *sua sponte* motion for downward departure.

# ARGUMENT

## I.   THE DISTRICT COURT DID NOT MAKE SUFFICIENT FINDINGS TO APPLY A FOUR LEVEL LEADERSHIP ROLE ENHANCEMENT UNDER U.S.S.G. § 3B1.1(a).

### A.   Standard of Review.

Criminal sentences are first reviewed for procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). In conducting this review, because Walker preserved his objection to application of U.S.S.G. § 2D1.1(b)(12), the Court reviews "a district court's application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Clark*, 665 Fed. Appx. 298, 300 (4th Cir. 2016) (citing *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012)). The Court finds clear error "'only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *United States v. Barnett*, 48 F.4th 216, 220 (4th Cir. 2022) (2023)(quoting *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010)). If there is no procedural error, the Court reviews the sentence's substantive reasonableness for abuse of discretion. *Gall*, 552 U.S. at 51; *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

## B.    Argument.

Walker agreed, as part of his plea, to a role enhancement between two to four points, but argued before and at sentencing that two or three points was the correct number, not four. (JA126, JA407). The court applied four points without making any individualized explanation for its decision, and without identifying any evidence in the record supporting such a substantial number. (JA126-127). This constituted procedural error. *Carter*, 564 F.3d at 328.

Procedural errors can include "'failing to adequately explain the sentence....'" *Carter*, 564 F.3d at 328 (quoting *Gall*, 552 U.S. at 50). A judge "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. The court's treatment must be "*individualized*," because "individualized treatment is necessary 'to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" 564 F.3d at 328 (quoting 552 U.S. at 52). The judge should explain why he rejects any party's arguments. *See id.* (citations omitted). And he should explain his individualized assessment through articulating statements in open

court, because without such explanation the reviewing court cannot satisfy itself that he has applied a reasoned basis. *See id.* (citations omitted). *See also United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019)(requiring explanation of sentence for meaningful appellate review); *United States v. Torres-Reyes*, 952 F.3d 147, 152 (4th Cir. 2020). These requirements apply not just to the 18 U.S.C. § 3553(a) analysis and variances, but – importantly to Walker's argument here – to calculating the correct Guidelines range in the first instance. *See United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010) (sentencing court must provide "a sufficient explanation of its rationale" in making factual findings to support its calculation of a defendant's Guidelines range).

Walker's PSR objections and Sentencing Memorandum submissions before sentencing made a specific argument for why two, rather than four, points should apply pursuant to U.S.S.G. § 3B1.1(a). (JA309-310, JA407). At sentencing, the government did not submit *any* evidence to satisfy its burden to support a four-level increase by a preponderance of the evidence. (JA126-127). The prosecutor simply stated, in conclusory fashion, that "our position is that this is firmly a four just like Mr. Jones. And, in fact, if there was more than a four, it

would be Mr. Walker's." (JA127). In equally conclusory fashion, the
sentencing judge agreed. (JA126). The sum total of his explanation for
applying four points was: "I see a whole lot of people that were in this
organization. It was a very complex organization. And there's no question
that this defendant was one of the leaders of it." (JA126-127). That is not
an individualized assessment. That does not point to any evidence in the
record. It does not explain any rationale for adding four points. It is
patently procedurally unreasonable.

## II. THE CMRA POST OFFICE BOX LOCATION IS NOT AN ADEQUATE PREMISES TO SUPPORT APPLICATION OF U.S.S.G. § 2D1.1(b)(12).

### A. Standard of Review.

Criminal sentences are first reviewed for procedural error. *Gall*,
552 U.S. at 51. In conducting this review, because Walker preserved his
objection to application of U.S.S.G. § 2D1.1(b)(12), the Court reviews "a
district court's application of the sentencing guidelines de novo and its
factual findings for clear error." *Clark*, 665 Fed. Appx. at 300 (citing
*Strieper*, 666 F.3d at 292. The Court finds clear error "'only if, on the
entire evidence, we are left with the definite and firm conviction that a
mistake has been committed.'" *Barnett*, 48 F.4th at 220 (quoting

*Manigan*, 592 F.3d at 631). If there is no procedural error, the Court reviews the sentence's substantive reasonableness for abuse of discretion. *Gall*, 552 U.S. at 51.

## B. Argument.

There was neither sufficient legal precedent nor evidentiary support for the district court to find that a Commercial Mail Receiving Agency ("CMRA") was a "premises" for purposes of U.S.S.G. § 2D1.1(b)(12). Just as a post office cannot be a "premises," neither should a post office- like store be. Moreover, there was no evidence that the primary purpose of the CMRA was to send drugs. As such, the government did not meet its burden by a preponderance of the evidence, and the sentence was both procedurally and substantively unreasonable.

Over Walker's objection, the court applied a two-point enhancement under § 2D1.1(b)(12). (JA126). That Guideline states: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." Section 2D1.1(b)(12)'s Application Note says the enhancement "'applies to a defendant who "[1] knowingly [2] maintains a premises (*i.e.*, a building, room, or enclosure) [3] for the purpose of manufacturing or distributing a controlled

14

substance, including storage of a controlled substance for the purpose of distribution.'" *Barnett*, 48 F.4th at 220 (quoting U.S.S.G. § 2D1.1 cmt. n.17); *cf. United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) (dividing the enhancement into three elements). The Note also observes:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be *one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises.* In making this determination, *the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.*

U.S.S.G. § 2D1.1 cmt. n. 17 (emphasis supplied). Application of the premises enhancement is fact specific and considers the totality of the circumstances. *Barnett*, 48 F.4th at 221 (citations omitted).

Here, no evidence supported the notion that Walker *primarily* used the CMRA for shipping illegal drugs. The district court made no findings regarding whether or how often Walker used the CMRA for drug mailings. He did not, as the Note requires, "consider how frequently the premises was used by the defendant for… distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." No evidence was introduced or discussed on this

15

issue, and the PSR is silent on the matter. Indeed, given that the business was a public mailbox and mail aggregation facility, it is extremely probable that the primary use of the facility was for Walker to earn money through the legitimate business of providing post office boxes to the public. The government presented no evidence otherwise. For this reason, alone, application of § 2D1.1(b)(12) is procedurally and substantively unreasonable.

In addition to committing error by applying § 2D1.1(b)(12) without evidence that the principal purpose of the public mailroom was to mail drugs, the Court committed error simply by concluding that CMRAs can constitute "premises" for purposes of § 2D1.1(b)(12). There does not appear to be a single opinion in the Fourth Circuit or elsewhere in which a court has held that a CMRA can qualify as a "premises" under the Guideline. CMRAs are most analogous to public post offices or post office boxes, which even the district court seemed to agree could not serve as "premises." (JA122).

### III. THE GOVERNMENT'S REFUSAL TO MOVE FOR A DOWNWARD DEPARTURE BASED ON WALKER'S SUBSTANTIAL ASSISTANCE WAS UNCONSTITUTIONAL AND NOT RATIONALLY RELATED TO ANY LEGITIMATE GOVERNMENT END.

#### A. Standard of Review.

Criminal sentences are first reviewed for procedural error. *Gall*, 552 U.S. at 51. In conducting this review, because Walker preserved his objection to application of U.S.S.G. § 2D1.1(b)(12), the Court reviews "a district court's application of the sentencing guidelines de novo and its factual findings for clear error." *Clark*, 665 Fed. Appx. at 300 (citing *Strieper*, 666 F.3d at 292. The Court finds clear error "'only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *Barnett*, 48 F.4th at 220 (quoting *Manigan*, 592 F.3d at 631). If there is no procedural error, the Court reviews the sentence's substantive reasonableness for abuse of discretion. *Gall*, 552 U.S. at 51.

#### B. Argument.

The government's decision to terminate Walker's cooperation and not move for downward departure based on his substantial assistance was unconstitutionally driven by an improper motive and not rationally

17

related to any legitimate government end. The district court erred by not conducting an evidentiary hearing, expressly finding that the government's refusal to move for a downward departure was unrelated to a legitimate end, and making a downward departure motion based on Walker's substantial assistance. *Wade v. United States*, 504 U.S. 181, 185-86 (1992); *United States v. Trivette*, 159 Fed. Appx. 498, 500 (4th Cir. 2005). When the government fails to make a motion under U.S.S.G. § 5K1.1 ("5K"),[3] it commits prosecutorial misconduct if it "refused to make the motion based upon an improper motive." *Trivette*, 159 Fed. Appx. at 500. The Supreme Court has held that "district courts may subject the Government's refusal to file [a 5K] motion to review for constitutional violations." *Wade*, 504 U.S. at 183. The court held that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. *Id.* at 185–86. A

---

[3] As in *Wade*, this argument treats 5K and 18 U.S.C. 3553(e) as equivalent for purposes of its analysis. 504 U.S. at 184–85 ("Wade and the Government apparently assume that where, as here, the minimum under the Guidelines is the same as the statutory minimum and the Government has refused to file any motion at all, the two provisions pose identical and equally burdensome obstacles.").

defendant is entitled to such relief if "the prosecutor's refusal to move was not rationally related to any legitimate Government end…." *Id.* at 186. The district court should further inquire through an evidentiary hearing upon a "substantial threshold showing" of an unconstitutionally improper motive. *United States v. Wallace*, 22 F.3d 84, 87 (4th Cir. 1994).

Here, the court itself – through the outrage it expressed that the government arbitrarily and vindictively ended Walker's work toward the prosecution of a high-value target – established this "substantial threshold showing" of unconstitutional government behavior, and should have conducted an evidentiary hearing. Walker cooperated extensively, including serious undercover work that put himself and his family at risk. (JA382-385). The government aborted this important undercover operation, centered on Walker's assistance, in apparent retaliation for what it regarded as his unhelpful testimony in a co-defendant's trial – testimony that the court concluded did not amount to lying or perjury. (JA129-135, JA146-148). The government never articulated a rational basis for this decision, and the district court believed there was none.

The court – in so many words – said that the government's decision was not rationally related to any legitimate end. Indeed, it is evident from

the court's discussion at sentencing that it believed the prosecutor's decision was irrational. (JA148). The court said: "I don't know why you were pulled off the street in the middle of an operation to come surrender after having been out for months." (JA148). It continued: "I've never been told any necessary or legitimate reason for that decision to have been made at that time in the middle of an important undercover investigation." (JA148). In short, he expressly found that there was no rational relationship between the government's decision to prematurely terminate Walter's cooperation in the critical Atlanta investigation and Walker's non-perjurious testimony at a co-defendant's trial.

Having made this finding, the trial court should have taken appropriate relief. This would have started with conducting an evidentiary hearing. Then, this relief would have included not merely varying downward, but granting a *sua sponte* motion for downward departure, ensuring that Walker received a large sentence reduction consistent with what he would have received if he had completed his undercover operation and been the basis for prosecuting the leaders of a massive drug conspiracy. Such a sentence reduction should have taken into account risk to Walker and his family, and been consistent with what

20

would typically be requested in a 5K motion for similar assistance. The Court should remand to allow the trial court to determine what a typical 5K reduction for similar cooperation would be, and sentence Walker accordingly.

## CONCLUSION

The Court should vacate the judgment and remand for resentencing.

## REQUEST FOR ORAL ARGUMENT

Walker requests oral argument because it would aid the decisional process.

Respectfully submitted,

*/s/ William R. Terpening*
William R. Terpening
TERPENING LAW, PLLC
221 West 11th Street
Charlotte, NC  28202
(980) 265-1700

*Counsel for Appellant*
 *Jervonta Antonio Walker*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>3,921</u> words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Century Schoolbook</u>.

This the 19th day of April 2023

Respectfully submitted,

<u>/s/ William R. Terpening</u>
William R. Terpening
TERPENING LAW, PLLC
221 West 11th Street
Charlotte, NC  28202
(980) 265-1700

*Counsel for Appellant*
*  Jervonta Antonio Walker*